Leza PRICE, Jr. *v.* STATE of Arkansas

CA CR 79-72                                    599 S.W. 2d 394

Opinion delivered January 30, 1980
Affirmed by Supreme Court April 28, 1980
Released for publication May 21, 1980

*Givens & Buzbee*, by: *Art Givens*, for appellant.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

DAVID NEWBERN, Judge. The appellant was convicted of theft of an automobile of a value in excess of $2500 and sentenced to 20 years confinement and a fine of $15,000. His appeal raises the question whether evidence of previous offenses should have been admitted and whether the prosecutor's closing remarks were so calculated to inflame the jury as to be a ground for mistrial. We affirm the conviction.

Billy Reno, a co-defendant who decided to plead guilty apparently shortly before the trial, testified that he and the appellant had been working together stealing cars. He said on the day the offense charged was committed he and the appellant drove to Benton and to a used car lot there with the intent to steal a car. While the appellant distracted the salesman, Reno took the keys to a Cadillac from the top of the hood of the car and replaced them with other keys. That night, after the business had closed for the day, the appellant brought Reno back to the lot where he started the car and began driving it away.

In the meantime, the substitution of the keys had been noticed by the employees and owner of the car lot, and a policeman was waiting in the car lot office after closing time. As Reno attempted to drive the car from the lot, he was shot by the policeman and arrested.

In corroboration of Reno's testimony, the appellee played for a jury the recording of a telephone conversation

between the appellant and Passmore, a police informant. In the conversation the appellant complained of the "stake out" where his buddy had about been "blown away." He referred to having gotten a truck to which he was afraid to return, to having "gotten" two other cars, to arranging for fake drivers' licenses and bills of lading for vehicles, and to setting up an alibi for some event, apparently the one charged here, by saying he was at Memphis or West Memphis.

The appellant objected to both the testimony of Reno and the tape on the basis that they contained evidence of other offenses committed by the appellant. With respect to the tape recording, the appellee alleges the appellant could have had access to it before the trial, presumably by a discovery motion pursuant to Ark. R. Crim. P. 17.1 (a) (ii), and that his failure to move to suppress the tape before the trial in accordance with Rule 16.2 waived any objection.

Whether this recorded statement falls within the purview of Rule 16.2 is a question the answer to which we will save for another day. We have at least some doubt whether a rule which is phrased in terms of suppression of things "seized" applies to a statement obtained in the manner described. To answer in the affirmative we would be required to find it fits the definition of "seizure" in Rule 10.1 (b) as ". . . the obtaining of information by an officer . . . under . . . color of authority."

We need not reach all the questions such a determination would require, as both the recorded statement of the appellant and Reno's testimony raise the same issue. Reno's testimony would not be left uncorroborated by exclusion of the tape recording, as the owner of the car lot testified that the appellant had been on the lot the day in question, that the green and white truck he and Reno had been driving earlier was seen driving past the lot shortly before Reno attemted to take the car, and the appellant was seen driving the truck past the lot an hour after the event. In addition, the appellant admitted having been on the lot with Reno earlier in the day. The corroboration of an accomplice's testimony required by our statute, Ark. Stat. Ann. § 43-2116 (Repl. 1977), is only

that which tends in ''some degree'' to connect the accused with the crime. *Gardner* v. *State*, 263 Ark. 739, 569 S.W. 2d 74 (1978); *Underwood* v. *State*, 205 Ark. 864, 171 S.W. 2d 304 (1943). Unlike *Pollard* v. *State*, 264 Ark. 753, 574 S.W. 2d 656 (1978), we have here evidence other than the testimony of an accomplice directly connecting the appellant to the offense, *i.e.*, the testimony of a car lot employee that the appellant had diverted his attention from the car to be stolen while Reno exchanged the keys. The employee testified the appellant asked to look at a truck on the other side of the lot from the place where the Cadillac was parked. He was not, however, sufficiently distracted to miss seeing Reno remove the keys which had been atop the hood of the Cadillac and then walk behind the truck the appellant and Reno had been driving and then return to the Cadillac and place on it a set of keys which turned out to be different ones. It was this act of picking up and putting down keys that aroused the car lot personnel to suspect the appellant and Reno.

Thus, we come to the question whether the evidence tending to show other offenses was admissible. The applicable evidence rule is Ark. Stat. Ann. § 28-1001, Rule 404 (b) (Repl. 1979), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be. admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This is one of the rules of evidence which is most difficult to apply. It codifies the rule which was in existence before it was adopted, and it has been the subject of numerous decisions in the Arkansas Supreme Court and other appellate courts. Although much similar language is found in the cases, the decisions seem to have been pretty much ad hoc. As long as the purpose of the rule is kept in mind, however, ad hoc application of it may be in order.

The most helpful of the Arkansas decisions is *Alford* v. *State*, 223 Ark. 330, 266 S.W. 2d 804 (1954), in which Justice George Rose Smith discussed the rule and identified the

problem in its application as being whether one of the "so-called" exceptions, in that case, evidence of another crime tending to prove "intent," was present. This suggests a fairly mechanical approach to the rule which apparently was not the intent of its modern version drafters. Our rule is drawn from the federal rule, and a discussion of the intent of the drafters is found in *The Federal Rules of Evidence: A Symposium,* 71 Nw. U.L.R. 634 (1976). In that article, the authors suggest two possible approaches to the "other offenses" problem. One would emphasize admissibility by viewing the words "such as" in the rule as indicating the list following to be exemplary only. The other would admit the evidence only if it fell strictly within one of the categories.

In our view, the rule should be interpreted to exclude evidence of other offenses when its only purpose is to show the accused's character or some general propensity he might have to commit the particular sort of crime in question. It should not be interpeted to exclude evidence of other offenses when that evidence is probative of the accused's participation in the particular crime charged. If it is probative of his participation the only remaining question should be whether it is so prejudicial that it should be excluded because the prejudice brought about by exposition of other offenses is not sufficiently balanced by the probative value of the evidence on the facts sought to be proved. See, Rule 403.

Although Rule 403 was not specifically in issue at the trial and has not been cited by the appellant here, we think it must be included in the ultimate determination of admissibility. This is the approach applied in *U.S.* v. *Dansker*, 537 F. 2d 40 (3rd Cir. 1976), and suggested in the article cited above.

A good example of the approach is the decision in *U.S.* v. *Coppola*, 526 F. 2d 764 (10th Cir. 1975). The court said:

As to the evidence that the government offered, it is to be noted that inasmuch as Molina was admittedly the actual killer, it was relevant to introduce evidence of Coppola's heroin traffic so as to demonstrate his motive for and connection with the murder. After all, the gov-

ernment was seeking to show that Coppola was trying to maintain his position as the principal narcotics distributor at Leavenworth. Herman's testimony supported this, and so the government's evidence in this area had probative value and was thus properly admitted. [Citations.]

From a careful examination of the record, we are convinced that the government organized and presented its evidence in an effort to validly utilize this evidence and not to exploit it as a means in and of itself to convict the defendant. [526 F. 2d at 772]

Note that the court used one of the terms from the "exceptions" part of the rule, that is, "motive," but did not limit itself to that, as it added, "and connection with" the offense. The balancing came at the end of the quotation where the court assured itself the evidence was not being used "as a means in and of itself to convict the defendant."

In this case, the evidence of other offenses showed a strong connection between the appellant and Reno. The appellant took the stand to deny any intent to participate in the theft. He said he had gone to the lot with Reno to act as co-signer on a note in the event Reno found a car he wanted to buy. We believe the question of his intent with respect to some of his conduct was raised in this case by him, and the evidence had a "true relation to the issue of intent" and thus it would be admissible under the standard stated by Justice Smith in the *Alford* case, 223 Ark. at 338.

In conclusion on this point, we apply the standard of the *Alford* case with an elaboration, somewhat as stated by the Eighth Circuit Court of Appeals in *U.S.* v. *Conley*, 523 F. 2d 650 (8th Cir. 1975), *cert. den.*, 424 U.S. 920 (1976). First, an issue must be raised as to which the "other offenses" evidence relates. Second, the proffered evidence must be clear and convincing, and third, the probative value of the evidence must outweigh its unwarranted prejudicial effect.

In this case we find the evidence related to the intent or motive of the appellant — an issue his denial and explanation clearly raised. The "other offenses" evidence was very

clear and convincing that he and Reno were conducting a car stealing operation, and tended to refute the appellant's explanation of his conduct. The probative value of the evidence thus was strong, and it outweighed any possibly undue prejudice to the appellant.

The other point raised by the appellant was the failure of the trial court to grant a mistrial when the prosecutor, in describing the acts of the appellant, made what he called an analogy to a "dope trafficker" who used others to commit offenses for his benefit. This reference was made in a way which left no doubt the prosecutor was not describing the appellant as a "dope trafficker," and no mistrial was warranted. We see nothing inflammatory in the remark.

Affirmed.