Jimmy Douglas SLAVENS *v.* STATE of Arkansas

CA CR 81-15                              614 S.W. 2d 529

Court of Appeals of Arkansas
Opinion delivered April 29, 1981

*Sam Sexton, Jr.*, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie Powell*, Asst. Atty. Gen., for appellee.

DONALD L. CORBIN, Judge. Appellant, Jimmy Douglas Slavens, appeals from the verdict of a Washington County jury finding him guilty of manslaughter and fixing his punishment at a term of two years in the Department of Correction and a fine of $10,000.

On the evening of April 14, 1979, the victim, Douglas Elkins, accompanied by a friend, Rex Simmons, visited the Am Vets Club in Fayetteville, Arkansas. At about 2:00 a.m. on April 15, 1979, he was seated at a table with Donald Clark, Marge Clark, Terri Slavens and Rocky Slavens, brother of the defendant. Elkins engaged in an altercation with Donald Clark which ended with Clark partially on top of Elkins. Rex Simmons, Elkins' friend, engaged in a brawl with club officials and a Fayetteville police officer. Following Simmons' removal from the club, Elkins was dragged from the club, apparently unconscious. He was loaded into the same police car that Simmons was in. The evidence indicates that the Am Vets Club was quite dark at the time of the altercation. At approximately 2:53 a.m. on April 15, 1979, at the police station, Roger Logue, a Fayetteville police officer, opened the rear door of the police vehicle to remove Elkins. He observed that Elkins' head was on the floorboard and his feet were up in the rear window of the car. A brief examination indicated to Logue that Elkins was dead and his body was removed from the car and either placed or dropped on the sidewalk. An autopsy by the State Medical Examiner disclosed that Elkins had consumed a considerable amount of alcohol and had died of a broken neck. These facts were undisputed. The events occurring from the time Elkins sat at the table with the Clarks until the discovery of his death are in considerable dispute.

Appellant raises seven points for reversal on appeal. We shall consider each in the order raised by appellant.

I.

Appellant's first point for reversal is that there is no substantial evidence to support the verdict of the jury in that the medical proof as to the cause of death is inconsistent with any conduct shown to have been chargeable to appellant.

Appellant argues that the evidence in this case is not only insubstantial, but that it is totally absent in three important areas:

(1) The undisputed cause of death is inconsistent with any conduct chargeable to appellant.

(2) The injuries sustained by the deceased are not consistent with any conduct chargeable to appellant.

(3) Even had the State supplied proof that appellant caused the death of the deceased, there is no evidence that appellant's conduct was reckless.

The State Medical Examiner testified that the victim sustained two mortal wounds: a blow to the right side of the head and a broken neck. The broken neck, which caused instantaneous death according to the State Medical Examiner, had been preceded by a blow to the head. The victim had a laceration on the chin which the Medical Examiner explained could have been caused by a blunt object. He believed this was the blow that broke the neck of the victim as it would have caused the head to twist to the side and cause the fracture of the neck to occur.

There was testimony by seven witnesses that the appellant repeatedly swung a blunt object. Two witnesses testified that appellant was swinging at the victim. In considering the testimony on the question of sufficiency of the evidence, we will view the evidence in the light most favorable to the State, considering only that testimony that lends support to the jury verdict and disregarding any conflicting testimony which could have been rejected by the jury on the basis of credibility. *Chaviers* v. *State*, 267 Ark. 6, 588 S.W. 2d 434 (1979). Clearly viewed in the light most favorable to the State, there was substantial evidence to sustain the jury's verdict.

Appellant raises the question of whether his conduct was reckless. Ark. Stat. Ann. § 41-203(3) (Repl. 1977) defines "recklessly" as follows:

A person acts recklessly with respect to attendant circumstances or a result of his conduct when he con-

sciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

Appellant admitted that he struck two other persons with a mace can in the affray instant to the killing. Viewed in a light most favorable to the State, *Chaviers* v. *State, supra*, there was substantial evidence for a jury to conclude that appellant acted recklessly.

## II.

Appellant's second point for reversal is that the court erred in admitting evidence concerning a separate offense of assault committed by appellant as that offense had no connection with the death of Elkins and such evidence served only to inflame the jury against appellant.

Appellant worked as a doorman at the Am Vets Club. Among other duties, he sometimes assisted in the removal of persons engaged in misconduct in the club. Sometime prior to the events which resulted in the death of Douglas Elkins, appellant was involved in an incident which required removal of two patrons of the club. There was a fight and appellant either kicked or struck one of the patrons or both. The evidence of the State's witnesses indicated that appellant commited a vicious assault upon a helpless patron.

Prior to the commencement of the trial, appellant learned that the majority of the State's witnesses had been called to testify about this prior assault and a motion *in limine* was timely filed to exclude such testimony because it dealt with a separate and uncharged offense. A hearing was held on this motion and it was overruled for the stated reason that the court could not forecast what the witnesses were actually going to say.

The State produced at the trial a total of fifteen witnesses including investigative police officers and the State

Medical Examiner. Of the fifteen witnesses, twelve were in the AmVets Club at the time of the incidents involved here. Of the twelve, eight began their testimony by detailing, or attempting to detail, appellant's assault against the other patrons who had no connections with Elkins or the incident in which Elkins was killed. At trial, appellant continuously objected to the testimony concerning the prior fight.

This point involves the application of Ark. Stat. Ann. § 28-1001, Uniform Rules of Evidence, Rule 404(b) (Repl. 1979), which provides:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Price* v. *State*, 267 Ark. 1172, 599 S.W. 2d 394 (1980), the Arkansas Court of Appeals stated the following test for the application of Rule 404(b).

> [T]he rule should be interpreted to exclude evidence of other offenses when its only purpose is to show the accused's character or some general propensity he might have to commit the particular sort of crime in question. It should not be interpreted to exclude evidence of other offenses when that evidence is probative of the accused's participation in the particular crime charged. If it is probative of his participation the only remaining question should be whether it is so prejudicial that it should be excluded because the prejudice brought about by exposition of other offenses is not sufficiently balanced by the probative value of the evidence on the facts sought to be proved.

The Court in *Price* v. *State, supra*, then went on to state:

> First, an issue must be raised as to which the "other offenses" evidence relates. Second, the proffered evi-

dence must be clear and convincing and third, the probative value of the evidence must outweigh its unwarranted prejudicial effect.

The Arkansas Supreme Court affirmed *Price* v. *State* at 268 Ark. 535, 597 S.W. 2d 598 (1980).

In *McCoy* v. *State*, 270 Ark. 145, 603 S.W. 2d 418 (1980), the Supreme Court again dealt with the application of Rule 404(b). The Court stated that it is well-settled that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, is not admissible at the trial of the accused. *Moser* v. *State*, 266 Ark. 200, 583 S.W. 2d 15 (1979); *Alford* v. *State*, 223 Ark. 330, 266 S.W. 2d 804 (1954). Even if the events comprising the objectionable testimony were considered to be a part of the same transaction or proof of knowledge, opportunity, etc.; there are instances where evidence of other offenses should not be admitted, particularly where its prejudicial impacts substantially outweigh its probative value. *United States* v. *Moody*, 530 F. 2d 809 (8th Cir. 1976).

In *Moser* v. *State, supra*, the Arkansas Supreme Court stated that the general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction, are not admissible at the trial of the accused. *U.S.* v. *Moody, supra*.

While appellant contends that the evidence of the other assault was admitted only to show that the defendant was a bad man, the State contends that the evidence of prior acts in this case is clearly relevant to prove intent. The State argues that appellant's actions immediately prior to the fatal fight were relevant to establish a state of mind and intent in that fight. The Court in *Moser* v. *State, supra*, quoting from *Alford* v. *State, supra*, stated, as to intent:

> What has happened is that the emphasis has shifted from evidence relevant to prove intent to evidence offered for the purpose of proving intent, by showing that the defendant is a bad man. If this transfer

of emphasis is permitted, the exclusionary rule has lost its meaning.

There is no showing of any connection between the first fight at the front of the club near the bar and the later incident involving Elkins at the back of the club. There is no claim that Elkins was involved in the fight in the front of the club or that he was even acquainted with the person involved there. As stated by the Court in *Moser* v. *State, supra*, "to allow evidence of other unrelated misconduct or crimes tends to allow the jury to be persuaded that if the accused is not guilty of the offense charged he ought to be convicted on account of the other activities". The only purpose served by this evidence is to show that the appellant is a bad man, the very type of evidence which this court has said must be excluded. We hold the trial court committed reversible error in admitting this testimony, and we reverse and remand this cause for retrial.

## III.

Appellant argues, as his third point for reversal, that he did not receive a fair trial as guaranteed by the Constitution of the United States and the Constitution of the State of Arkansas in that the trial tactics employed by the State made it impossible for the defense to be affirmatively presented. Appellant cites the cases of *Napue* v. *Illinois*, 360 U.S. 264 (1959) and *Alcorta* v. *Texas*, 355 U.S. 28 (1957) for the rule that the State cannot, for example, obtain a conviction when it has in its possession evidence which shows the defendant to be innocent. Appellant then enunciates seven tactics which he contends denied him a fair trial. However, as the State correctly points out, appellant's contentions simply do not rise to the level of the constitutional challenge for denial of a fair trial as found in *Napue* v. *Illinois, supra*, and *Alcorta* v. *Texas, supra*. Those cases involved the use of false evidence and the evidence in this case is not false, nor even alleged to be.

Appellant contended that certain testimony was exculpatory and inconsistent with his guilt which was clearly a

question for the jury, not a denial of a fair trial. We find no error here.

## IV.

Appellant's fourth point for reversal is that the trial court erred in its refusal to instruct the jury as to the limited purpose of prior inconsistent statements. The statement alleged by appellant to constitute error involved the witness Wayne Rieff. The State sought to introduce a prior statement made by this witness. The questioning went as follows:

Q. Wayne, do you remember talking to Mr. Ziser back on November 13th?

A. Yes.

Q. Do you deny that you told him that Mr. Slavens was hitting Doug Elkins in the head and shoulders with a blackjack?

A. Well, I don't know what I said to him.

Q. O.K. Will you deny you made this statement?

A. No.

At this point, counsel for the appellant objected and asked the court to instruct the jury regarding the limited effect to be given to the prior statement. The court, in making its ruling, stated that this questioning was necessary to lay a proper foundation as to whether or not there was an inconsistent statement. The prosecutor was then permitted to elicit details of the prior inconsistent statement and the court did not, then, or at any other time, instruct or advise the jury as to the limited purpose for which prior inconsistent statements may be used.

AMCI 202 reads as follows:

Evidence that witness previously made a state-

ment which is inconsistent with his testimony at the trial, may be considered by you for the purpose of judging the credibility of the witness but may not be considered by you as evidence of the truth of the matter set forth in that statement.

The notes on use of this instruction state that this instruction should be given at the time the prior inconsistent statement is admitted into evidence, if requested by the defendant. The notes also state that this instruction should not be used when the prior inconsistent statement was given under oath and subject to the penalty of perjury at a prior trial, hearing, or other proceeding, because such statements are not hearsay and may be admitted to prove the truth of the contents of the statement.

Appellant cites the case of *Rowe* v. *State*, 271 Ark. 20, 607 S.W. 2d 657 (1980) in support of his position. In *Rowe* v. *State, supra*, appellant complained that the trial judge refused his request for an instruction taken from AMCI 202 relating to limitation of the jury's consideration of prior inconsistent statements. The Court noted that the request was made after both parties had rested rather than at the time the statement was introduced. The State objected because the instruction was not given at the proper time. The Arkansas Supreme Court pointed out that the note on use accompanying the model instruction said it should be given if requested by counsel at the time the prior inconsistent statement is made. In the instant case, as appellant points out, the request for the instruction on the prior inconsistent statement was made at the time at which the statement was to be offered.

The State argues that should the court consider that a prior inconsistent statement was entered into evidence, then a limiting instruction was not proper as the prior statement was given under oath and was independently admissible. Ark. Stat. Ann. § 28-1001, Uniform Rules of Evidence, Rule 801(d)(1)(i) provides:

(d) Statements Which are Not Hearsay. A statement is not hearsay if:

(1) Prior statement by a witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and, if offered in a criminal proceeding, was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, . . . .

There are no Arkansas Supreme Court decisions interpreting Rule 801(d)(1)(i) as it applies to criminal proceedings.

In the instant case the witness Wayne Rieff gave the statement *under oath* to Deputy Prosecuting Attorney Andrew Ziser at the Washington County Courthouse Annex on November 13, 1979.

Under Ark. Stat. Ann. § 41-2602 (Repl. 1977) "[a] person commits perjury if in any official proceeding, he makes a false material statement, knowing it to be false, under an oath required or authorized by law." "Official proceeding" is defined by Ark. Stat. Ann. § 41-2601 (4) (Repl. 1977) to be "a certain proceeding heard before any ... official authorized to hear evidence under oath . . . ."

Ark. Stat. Ann. § 43-801 (Repl. 1977), provides:

> The prosecuting attorneys and their deputies shall have authority to issue subpoenas in all criminal matters they are investigating; and shall have authority to administer oaths for the purpose of taking the testimony of witnesses subpoenaed before them; such oath when administered by the prosecuting attorney or his deputy shall have the same effect as if administered by the foreman of the grand jury.

Under the identical federal rule, a statement given to the grand jury clearly comes under the "other proceedings" classification. *United States* v. *Mosley*, 555 F. 2d 191 (8th Cir. 1977). It would appear that all the criteria of Rule 801 (d)(1)(i) had been met and the prior inconsistent statement made by witness Rieff was admissible for its substantive content and a limiting instruction was not required.

## V.

Appellant's fifth point for reversal is that the trial court erred by giving, over the objection of the defendant, an instruction on circumstantial evidence. We disagree. While the State did rely on some direct evidence, the State also relied on circumstantial evidence. i.e., the victim received two mortal wounds which were consistent with blows from a blunt object. As the State relied on circumstantial evidence, it was proper for the trial court to give the circumstantial evidence instruction.

## VI.

Appellant's sixth point for reversal is that the trial court erred in commenting upon the evidence.

During the course of the examination of Rex Simmons, the Prosecutor undertook to impeach Simmons as to the description of clothing worn by Don Clark on the night of the offense. In the course of overruling an objection, the court stated:

> I will settle this for you right quick. The only thing he is able to ask him is what is inconsistent with previous testimony. The part about the red shirt was an inconsistent statement. I will overrule your objection.

We agree with the appellant that the court's statement did come close to a comment on the evidence; but, on retrial, it is a statement that is not likely to recur.

## VII.

Appellant's final point is that the court erred in instructing the jury, over the defendant's objections, on the offense of manslaughter.

Appellant contends that the statutes that authorize the giving of an instruction on lesser included offenses are in conflict with and violate the Constitution of the State of Arkansas. Appellant argues that since he was charged with

second degree murder, an offense which requires the State to prove that appellant intentionally caused the death of the deceased, that a charge of manslaughter, on the other hand, was improper because it permits a conviction where the reckless conduct of the accused may have caused the death. Appellant did not challenge that manslaughter is a lesser included offense of second degree murder. In *Chaney* v. *State*, 256 Ark. 198, 506 S.W. 2d 134 (1974), the Court held that the trial court may instruct on a lesser included offense over the objection of the defendant. Ark. Stat. Ann. § 41-105(2) provides:

> (2) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:
>
> . . . .
>
> (c) it differs from the offense charged only in the respect that ... a lesser kind of culpable mental state suffices to establish its commission.

In finding appellant guilty of manslaughter, the jury obviously found from all the evidence that appellant had "struck or beat the victim in this case with some type of club or blackjack" as was alleged in the bill of particulars, but had done so with a lesser degree of culpable mental state: "recklessly."

Appellant was informed of the nature of the accusation against him in compliance with Article 2, Section 10 of the Constitution of Arkansas.

Reversed and remanded.

CLONINGER and COOPER, JJ., concur.

JAMES R. COOPER, Judge, concurring. I agree with the result in this case and with the reasoning of the majority on all points with the exception of Point II. I disagree with the majority opinion on this point in that it apparently holds that since there was no showing of a connection between the two fights the evidence could never have been admitted. I believe the rule is correctly stated in *Price* v. *State*, 267 Ark.

1172, 599 S.W. 2d 394 (1980), where the Court indicated that where evidence of other offenses was probative of the accused's participation in the crime charged it should not be excluded unless it is so prejudicial that its prejudicial effect outweighs its probative value. In this case the testimony was highly contradictory as to the time frame between the two fights. What occurred during the first fight certainly, in my opinion, had probative value as to the offense charged against appellant here.

However, I concur in the result reached because it is my opinion that the prejudicial effect of the testimony regarding the first fight outweighed its probative value and it should have been excluded on that basis.

I am authorized to state that Judge Cloninger joins in this concurring opinion.