## LACKEY *v*. STATE.

### Opinion delivered February 3, 1900.

1. JURY IN CRIMINAL CASE—SELECTION.—In selecting a jury in a criminal case, the statutes (Sand. & H. Dig., §§ 2193, 2213), contemplate that each juror shall be examined touching his qualifications, first by the state and then by the defendant, and, after such examination is completed, if the juror is found by the court to be competent, the state may challenge him peremptorily or accept him; if accepted by the state, the defendant may challenge him peremptorily or accept him. (Page 418.)

2. EVIDENCE—EXCLUSION OF, NOT PREJUDICIAL WHEN.—The exclusion of evidence offered by the defendant in a murder trial tending to rebut the state's theory that defendant shot deceased from ambush, and consequently that he was guilty of murder in the first degree, is without prejudice if the jury found him guilty of murder in the second degree. (Page 419.)

3. INSTRUCTION—REASONABLE DOUBT.—If the state relies upon circumstantial evidence to convict, it is not necessary that each circumstance relied upon be proved beyond a reasonable doubt; the test being whether, upon the testimony in the whole case, there is a reasonable doubt of the defendant's guilt. (Page 420.)

4. SAME—INCOMPLETENESS.—If the defendant wishes the trial judge to instruct on any particular point not covered by his charge, he should ask an instruction covering the same, as it is not the duty of the court to give the whole law of the case, unless asked to do so. (Page 421.)

Appeal from Baxter Circuit Court.

JNO. B McCALEB, Judge.

*J. C. South,* for appellant.

It was error to refuse to allow appellant to show to what extent the gun used would "scatter" at the ranges contended for by the state and defendants respectively. The evidence was relevant. 1 Whart. Cr. Ev. §§ 20, 21; 42 Ark. 554; 29 Ark. 386. Where the state relies upon circumstantial evidence, each material circumstance must be proved beyond a reasonable doubt. 59 Ark. 426, 427. The instructions were not full enough. 9 S. W. 737; 10 S. W. 210; Wilson's Cr. Forms, No. 714. It was error to require defendants to examine jurors on the *voir dire,* before the state had exhausted her challenges to each particular juror. Sand. & H. Dig., § 2213.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellee.

The court instructed the jury correctly upon the law of circumstantial evidence. 34 Ark. 754; 30 Ark. 328. There was no error in the impaneling of the jury.

RIDDICK, J. This is an appeal from a judgment of conviction for murder. On the 19th day of August, 1899, Thomas Hamilton was shot and killed near his home in Baxter county. He had gone from his house to a spring, riding one horse and leading two others, for the purpose of watering them. Shortly afterwards his wife heard the report of three gun shots fired in the direction of the spring. Hamilton had previously had a difficulty with Milton Lackey, one of the defendants, and Milton had made threats against him. These threats had been

27

communicated to Hamilton and his wife, and when she heard
the sudden firing in the direction of the spring she at once sur
mised that her husband had been shot.   She immediately ra
towards the spring, screaming as she went.   On the way she
met a neighbor, to whom she told her fears, and he returned
with her.   They found Hamilton dead.   He had been sho
twice, once in front and a second time in the back, the last
shot being fired at such close range that his clothing caught
fire, and was burning when they found him.   The defendants,
who were brothers, were suspected, and were afterwards ar
rested and indicted for murder in the first degree.   On the
trial they admitted the killing, and admitted that they had fired
all three of the shots the reports of which were heard, but
claimed that they had acted in self defense.   They were found
guilty of murder in the second degree, and sentenced to five
years in the penitentiary, and the following questions are pre-
sented by their appeal.

1.   In selecting the jury, the trial judge ruled that, when
an examination of the persons summoned to serve as jurors
concerning their qualifications was desired, it should be made
in the following order: first by the state, and then by the de-
fendant.   After the examination was completed, if the juror
was found by the court to be competent, the state was then
required to accept or peremptorily challenge him; and, if ac-
cepted by the state, the defendant was then required to accept
or challenge.   The defendant excepted to this method of select-
ing the jury, and his counsel now insist that the state should
have been required to examine the juror, and then to exhaust
her challenges, both peremptory and for cause, before passing
him to defendant for examination.   But a consideration of sec-
tion 2193, Sand. & H. Digest, clearly shows that the contention
of counsel for defendant is not sound, for this section requires
that the court shall pass on the competency of the juror to serve
before either party is called upon to accept him or to reject him
by peremptory challenge.   It would be unreasonable to require
the state to exercise its right of peremptory challenge before the
court had finally determined that the juror was competent, and
the court could not determine that he was competent without

allowing the defendant to examine him touching his qualifications to serve. The ruling of the trial judge on this point was strictly in accord with the section above referred to, and undoubtedly correct. There may be some apparent conflict between this section and section 2213, Sand. & H. Dig., but, when read together, we think it is clear they mean that the state must exhaust her challenges for cause before passing the juror to the defendant for that purpose, and that, when the court has decided the juror to be competent, the state must first be called upon to accept or challenge the juror, and must accept before the defendant can be called on for that purpose.

2. The evidence showed that the shooting was done with a shot gun loaded with BB shot, and that the gun was owned by one Dilbeck. The wounds on the body of Hamilton showed that the first shot was fired at some distance away, and from the front of deceased, the shot wounds being scattered from the neck to the ankle. The last shot was fired in the back at close range, and resulted in almost instant death. During the trial the defendants offered to show by Dilbeck that since the killing he had tested the gun with BB shot, and that at the distance of fifty-nine feet it scattered about fifteen inches, and at forty yards it scattered shot over a space of about four feet in diameter. We agree with counsel for defendant that this evidence was competent, and under some circumstances might have been material, as tending to throw light on the position of the parties at the time of the shooting. Counsel say that they offered it to corroborate a statement of defendant Thomas Lackey that at the time he fired the first shot he was thirty-five or forty yards from Hamilton, and also to rebut the contention of the state that the first shot was fired from ambush, while defendants lay concealed, and only 59 feet from Hamilton. But we have carefully examined the record, and it does not show that Lackey made any statement as to how far he was from Hamilton at the time he fired the first shot. Nor is there anything in the record to support the contention of counsel that the state relied on the theory that the first shot was fired by defendant when only 59 feet from Hamilton. This being so, we do not see that the evidence of
. ilbeck was material, or could have in anyway affected the

finding of the jury. But, even if the record contained the facts set forth by counsel, still the only object of this testimony of Dilbeck was to rebut evidence on the part of the state tending to show that defendants lay in wait for Hamilton, and fired from ambush, and were therefore guilty of murder in the first degree. But the verdict of murder in the second degree shows that the jury disregarded such evidence, and based their verdict on the theory that defendants were not lying in wait; and so in either case no prejudice resulted to defendants by the exclusion of this evidence, and no cause for reversal is shown.

3.   The presiding judge, in his charge to the jury, told them that, before they "would be authorized to find the defendants guilty on circumstantial evidence alone, it should be of such a character as to exclude every reasonable hypothesis other than that the defendants are guilty." Counsel for defendants thereupon requested that he make the following addition to such instruction: "If the state relies on circumstantial evidence to prove any material allegation in the indictment, each circumstance relied on must be proved beyond a reasonable doubt." The circuit judge we think properly refused this request. The doctrine of reasonable doubt applies to the general issue of guilty or not guilty; but it does not apply to each item of testimony or to each circumstance tending to show the guilt of the defendant. It would in many cases be difficult to convict the guilty if the law forbade the jury to consider any circumstance or statement of fact not established beyond a reasonable doubt. Such a rule would be difficult of application, would embarrass the prosecution of criminals, and tend to confuse and mislead the jury. We did not intend to establish such a rule in *Gill* v. *State*, 59 Ark. 422, for the question was not in that case before us for decision. The test question under our statute is whether on the whole case, after all the evidence has been considered by the jury, they still entertain a reasonable doubt of the defendant's guilt. If they do, he should be acquitted. Sand. &. H. Dig., § 2233. And this seems to be the rule generally approved by the court of other states. *Keating* v. *People*, 160 Ill. 480; *Bressler* v. *People*, 117 Ill. 422; *Davis* v. *People*,

114 Ill. 86; *Murphy* v. *State*, 108 Ala. 10; *State* v. *Schoenwald*, 31 Mo. 147; *Barr* v. *State*, 10 Tex. Appeals, 507; *Morgan* v. *State*, 71 N. W. (Neb.) 788; Underhill on Crim. Evidence, 21; Gillett's Indirect and Col. Evidence, § 120.

The instruction given by the circuit judge on this point was in fact more favorable than the defendant had the right to demand, for this prosecution was not based on circumstantial evidence alone. The defendants admitted the killing, and, that being established, the burden of proving circumstances in justification of the act devolved on them. Sand. & H. Dig., § 1643. We are therefore of the opinion that if the court committed any error in its instruction on this point, it was in favor of, and not against, the defendants.

4. In conclusion, counsel for defendants say that the charge of the circuit judge was defective and incomplete in other respects, and contend that it was the duty of the court to give the whole law of the case to the jury, whether asked to do so or not. In support of this contention, they cite decisions of the courts of Texas, but those cases rest upon the peculiar statute of that state (2 Thompson on Trials, § 2340.) So far as we know, no other state enforces such a rule. In this state it has been often held that if a party wishes the trial judge to instruct on any particular point not covered by his charge, he should ask an instruction covering such point. If he sits silent, and makes no effort to remedy the defect, he has no legal ground of complaint.

The facts in this case, as they appear in the record, make out, we think, a strong case against the defendants, and the charge of the trial judge was correct, and we find no legal ground for disturbing the judgment rendered against them. It is therefore affirmed.