James Wesley SHAW *v.* STATE of Arkansas

CR 80-163                               611 S.W. 2d 522

Supreme Court of Arkansas
Opinion delivered February 16, 1981

*E. Alvin Schay*, State Appellate Defender, by: *Ray Hartenstein*, Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. John Wesley Shaw was con-

victed of the capital felony murder of two elderly people and sentenced to life imprisonment without parole. He argues on appeal that three errors were committed at his trial. All of his allegations are without merit. We have examined the record for any other errors, as we are required to do, and finding none, affirm the judgment. The State's theory of the case was that Shaw, an itinerant worker, became acquainted with the couple and visited with them at their cabin in Monte Ne, Benton County, Arkansas. Shaw killed the couple with a shotgun and hid their bodies in a cistern. He stole their pickup truck and shotgun and went to Oklahoma. The State's evidence showed that a shotgun had been discharged through a screen door three times and that both people were killed with a shotgun. Shaw was later seen in Oklahoma driving a truck similar to the elderly man's truck. He also was seen with a shotgun like the one belonging to the elderly man. Shaw later made statements denying that he had such a truck or shotgun and denying he was present when the killings occurred. Before the trial, Shaw learned that a jailmate of his was to become a witness against him and was prepared to testify that Shaw had admitted killing the couple.

After this incriminating evidence was introduced, Shaw made a detailed statement to the authorities in the presence of his lawyer. In this statement Shaw admitted that he had known the couple for some time and had stayed with them occasionally. On the day in question he said that both elderly people were drinking and arguing and that the woman got a gun and shot the man. Shaw said that he tried to grab the gun from the woman and shot the woman accidentally. He admitted dumping the bodies in a cistern. He also admitted taking the pickup truck and a shotgun, later selling the truck in Oklahoma.

Two alleged errors relate to the prosecuting attorney's argument. The prosecutor's remarks that are emphasized below were objected to by the defendant. The prosecutor said in his opening statement:

> . . . They began to share the same roof a few years before their deaths. You will hear testimony concerning their affection for each other, their lifestyle. Off and on they

came back to the old homestead, the old cabin at Monte Ne and lived there bothering no man, causing no one any problems whatsoever. They had worked their working lives and were now in retirement. *If they had one fault, it was that they were willing to lend a helping hand to* . . . [Emphasis added.]

In closing the prosecutor referred to the fact that Shaw gave a detailed statement to the police after the State had gathered considerable evidence. The prosecutor offered his opinion as to why Shaw had made this inculpatory statement. First, he argued that it was to offset the evidence discovered against Shaw. Finally, the prosecuting attorney said:

> . . . I submit to you that it's totally permissible for you to conclude that he agrees he involved himself in one of those deaths, but not two in order to beat the capital murder rap.

These statements in our judgment were within the limits permitted to advocates. The test is whether there was a manifest abuse of discretion by the judge in failing to properly act on an objection to improper remarks. *Parker* v. *State*, 265 Ark. 315, 578 S.W. 2d 206 (1979). We cannot find such an abuse in this case.

The court admitted into evidence a letter that the elderly lady apparently had written on the day of the killings. The State argued that its purpose was to show the woman's state of mind on that day in order to refute Shaw's statements that the couple had been arguing, drinking and fighting just prior to the killings.

The letter[1] was an ordinary letter about the weather and

---

[1] Dear Sis

Sat A.M. drop a few lines before it gets to hot. Just got back from town getting money orders & Gro. Sure been hot & dry as heck. Yard & everything burning. Things sure did wilt yesterday & I guess again today. Been having mower trouble all wk. but finally got it to going. Hope it holds up. Made 3 glasses R B Jelly Wednesday. Another batch to work up. Do that today. Alva went to see Springer to mow the field, said he would. Thought maybe he'd be here today, but guess not after 10 o'clock. Boy this deal over here by

contained only small talk. It may not have met the criteria for state of mind evidence envisioned by Rule 803, Uniform Rules of Evidence, [Ark. Stat. Ann. § 28-1001 (Repl. 1979)] but it was certainly harmless. Judgments are not reversed for harmless error. *Harrington* v. *California*, 395 U.S. 250 (1969).

Affirmed.

Durr Ranch going to be some deal. Big thing. Roads all over that hill clear to lake. Started a big building at front. Well let this do for now. Got to get around & clean the house out a little & make up my berries.

by by Love    Sis & Alva.