Earl Lee HARPER *v.* STATE of Arkansas

CA CR 80-72 614 S.W. 2d 237

Court of Appeals of Arkansas
Opinion delivered April 22, 1981

*E. Alvin Schay*, State Appellate Defender, by: *Deborah Sallings*, Deputy Defender; and *John Settle*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Jack Dickerson*, Asst. Atty. Gen., for appellee.

M ELVIN  M AYFIELD , Judge. The appellant, Earl Lee Harper, was charged with the crime of rape, in violation of Ark. Stat. Ann. § 41-1803 (Repl. 1977). Upon trial by jury, he was found guilty of a lesser included offense, sexual abuse in the first degree, as defined by Ark. Stat. Ann. § 41-1808 and § 41-1801 (Repl. 1977). The jury fixed his punishment at the maximum penalty of five years imprisonment and a fine of $10,000.

From the judgment imposing the penalty of the jury verdict, the appellant brings this appeal. The sole point relied upon is that the trial court erred in allowing appellant to be cross-examined with regard to conduct unrelated to his propensity for truthfulness.

Appellant was accused of "deviate sexual activity" with an eight-year-old girl. To be guilty of the lesser offense of sexual abuse in the first degree, as found by the jury, the appellant had to engage in an act of "sexual contact" with the girl. "Sexual contact" is defined by the statute as "any act of sexual gratification involving the touching of the sex organ or anus of a person, or the breast of a female."

The mother and father of the girl were divorced. The night before the alleged occurrence the appellant and the girl's mother had met at a club where there was drinking and dancing. They left the club together and appellant spent the rest of the night at the home where the mother and her daughter lived. The next day the three of them went to the home of a girlfriend of the mother and they returned to the mother's home about 9:30 p.m. The little girl went to bed, the mother started the laundry, and the appellant, who was watching television, decided he wanted an omelet. The mother did not have any eggs and appellant asked her to go to the store and get some. She agreed and was going to take her daughter with her, but appellant said to leave the girl in bed since the mother would be gone only a few minutes. The mother testified she returned from the store in not more than ten minutes and found her daughter crying. After talking to

the girl, the mother asked appellant to leave the house and he did.

At the trial, the child and the appellant gave different accounts of the events in that short interval while the mother was gone to the store. The child's testimony contained allegations which, if believed, were legally sufficient to convict appellant of sexual abuse in the first degree. The point which appellant raises in this appeal, however, relates to a series of questions about appellant's conduct earlier in the day.

Upon cross-examination of appellant, the prosecutor questioned him about "touching" the girl during the afternoon while they were visiting in the home of the mother's girlfriend. The court permitted the inquiry over the objection that the question was improper because there had been no prior evidence about such conduct. Thereupon, the following occurred:

> Q. That afternoon is it not true that you were sitting down in a chair, and Heliana was on a stool in front of you, and when you pulled her up you put your hand between her legs and held her that way for a few minutes?
>
> A. To the best of my recollection, I was sitting there watching television, Heliana was sitting on a stool in front of me, but I never touched her in any unnatural manner, no, sir.
>
> Q. Well, did you touch her?
>
> A. I don't recall.
>
> Q. You don't recall even having any hands on her at all?
>
> A. I may have put my hands on her shoulder, on her head, or something like that, because all the kids were sitting there in front of me right at my feet.
>
> Q. You don't recall pulling her up to you by putting

your hand down in the wrong place?

MR. SETTLE: Your Honor, I believe he has answered.

THE COURT: Yes, I permitted you to inquire.

There had been no prior evidence about such conduct that afternoon and the appellant contends this was an attempt to impeach credibility which was improper under Rule 608(b), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), which reads:

> (b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In *Gustafson* v. *State*, 267 Ark. 278, 590 S.W. 2d 853 (1979), the court said that before adoption of the Uniform Rules of Evidence it was proper to ask on cross-examination whether a defendant was guilty of almost any kind of crime, but that Rule 608 (b) changed that by requiring, before acts of misconduct for impeachment purposes may be inquired into on cross-examination: (1) the questions must be asked in good faith, (2) the probative value of the conduct must outweigh any prejudicial effect, and (3) the misconduct must relate to truthfulness or untruthfulness. These conditions were again stated and followed in *Divanovich* v. *State*, 271 Ark. 104, 607 S.W. 2d 383 (1980).

Applying Rule 608 (b) and the law set out in the above cases to this case, we must agree that the questions asked appellant on cross-examination were improper. In the first place, *Gustafson* indicated that misconduct relating to

truthfulness would include forgery, perjury, bribery, false pretense, theft, and embezzlement, but said, "Obviously, some misconduct would not bear on truthfulness. For example, murder, manslaughter or assault do not *per se* relate to dishonesty." And in *Divanovich* the court said, "Questions regarding appellant's violent nature and destruction of property are wholly unrelated to his propensity for honesty and, therefore, improper." So, the questions about appellant "touching" the girl during the afternoon would not, under *Gustafson* and *Divanovich*, have any relation to his truthfulness or untruthfulness.

Another condition that must be met is that the probative value of the conduct must outweigh any prejudicial effect. Here, the appellant denied that he "touched" the girl as suggested by the prosecutor. Rule 608 (b) provides that "specific instances of the conduct of the witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." Thus the appellant's denial ended the inquiry since, as *Gustafson* says, "The State may not go beyond that answer, as it may in the case of a conviction, and prove the misconduct by extrinsic evidence." Under this situation, a New Mexico case cited in *Gustafson* held the questioning prejudicial because no evidence of probative value resulted and the *Gustafson* opinion says, "We arrive at the same conclusion."

The third condition to be met is that the questions must be asked in good faith. We hesitate to say that the questions about appellant's conduct during the afternoon were not asked in good faith in this case. The record is devoid, however, of any information upon which the questions were based. It would be helpful, in this regard, to both the trial court and the appellate court for the prosecutor, at least, to state (out of the jury's hearing) the information he has which causes him to want to ask such questions. After all, there is language in *Gustafson* which says "Prosecuting attorneys would be well advised to procure a ruling from the trial judge before asking such questions before a jury."

The State agrees that appellant's conduct during the

afternoon would be inadmissible to show only that he was a bad man who should be convicted, but it says that was not the purposes of the questioning. The conduct inquired about was admissible, the State contends, under Rule 404(b) of the Uniform Rules of Evidence, as proof of motive, intent, preparation, or plan. The distinction, however, is that in the cases cited by the State there was testimony, or tangible evidence, to show the conduct, but in the case at bar there is no such evidence. There is nothing here but questions asked by the prosecutor. Rule 404 (b) cannot apply without evidence. The same distinction exists with regard to the State's argument that intermingled acts are admissible to show the circumstances "surrounding the whole criminal episode." There is simply no evidence of an "act" in the afternoon — only questions asked on cross-examination. To the extent that *Alexander* v. *State*, 257 Ark. 343, 516 S.W. 2d 368 (1974), cited by the State, is in conflict with what we have said here we call attention to the fact that it was decided before the adoption of the Uniform Rules of Evidence and before the decisions of *Gustafson* and *Divanovich*.

We, therefore, hold that the prosecutor's cross-examination about appellant's conduct during the afternoon was improper. We cannot say these questions had no prejudicial effect. *McIntosh* v. *State*, 262 Ark. 7, 552 S.W. 2d 649 (1977). *Chapman & Pearson* v. *State*, 257 Ark. 415, 516 S.W. 2d 598 (1974).

Reversed and remanded.