W. T. VOWELL *v.* STATE of Arkansas

CA CR 81-87                           628 S.W. 2d 599

Court of Appeals of Arkansas
Opinion delivered March 3, 1982

*Robert E. Young*, of *Rhine, Rhine & Young*, for appellant.

*Steve Clark*, Atty. Gen., by: *William C. Mann, III*, Asst. Atty. Gen., for appellee.

JAMES R. COOPER, Judge. Appellant was charged in the Greene County Circuit Court with violating Ark. Stat. Ann. § 41-1601 (Repl. 1977), first degree battery. It was alleged that he had caused serious physical injury to another person by means of a deadly weapon under circumstances manifesting extreme indifference to the value of human life. Following a jury trial, appellant was found guilty of first degree battery and sentenced to nine years in the Arkansas Department of Corrections. Appellant urges eight grounds for reversal.

I.

THE TRIAL COURT ERRED IN REFUSING TO CONDUCT *VOIR DIRE* IN ACCORDANCE WITH ARKANSAS STATUTE § 43-1903.

Appellant's attorney requested that *voir dire* be conducted in accordance with Ark. Stat. Ann. § 43-1903 (Repl. 1977), and his request was stated as follows:

MR. YOUNG: Your Honor, I would ask that the State of Arkansas interview each juror one juror at a time, then I voir dire the juror, then the State exercise its challenge and then I exercise my challenge.

THE COURT: Well, I am going to overrule that to one slight extent, I am going to let the State examine the jurors, if they want to examine all twelve or one at a time. Whatever they want to do they can do. Now, as far as you are concerned, when it comes your time to

examine, you will be allowed to examine the jurors one at a time and then you can submit that person and the State must exercise their option at that time before you go to the next one, but I'm not going to tell the State that they've got to examine each juror one at a time. Now, if you wish to, you certainly may. (T. 34, 35)

The State elected to question the jurors three at a time.

Arkansas Statutes Annotated § 43-1903 states:

Felonies, selection in. — In a prosecution for felony, the clerk, under the direction of the court, shall draw from the jury box the names of twelve [12] petit jurors, who shall be sworn to make true and perfect answers to such questions as may be asked them touching their qualifications as jurors in the case on trial, and each juror may be examined by the State and cross-examined by the defendant, touching his qualifications. If the court decide he is competent, the State may challenge him peremptorily or accept him, then the defendant may peremptorily challenge or accept him. If not so challenged by either party, he shall stand as a juror in the case, and each of the twelve [12] jurors shall be examined and disposed of in like manner. If any of said jurors are disqualified or challenged, the clerk shall draw from the box as many more as may be required, and as often as may be required, until the jury shall be obtained, or the whole panel exhausted.

Both the appellant and appellee cite two recent Arkansas cases on this point, the appellant claiming those decisions require reversal, and the appellee seeking to distinguish them. In *Clark* v. *State*, 258 Ark. 490, 527 S.W. 2d 619 (1975), the trial court requested examination of all twelve jurors by both parties before any peremptory challenges were permitted. After all twelve jurors were examined, the State was required to exercise its peremptory challenges, and then the appellant was required to make his challenges. The Arkansas Supreme Court quoted Ark. Stat. Ann. § 43-1903 (Repl. 1964), and then stated:

It can be seen from this statutory scheme that the State is first required to accept or reject an individual juror before the defendant is required to accept or reject an individual juror. A number of cases beginning with *Lackey* v. *State,* 67 Ark. 416, 55 S.W. 213 (1900), have consistently given this construction to the statute, *supra.* The State to sustain this conviction does not contend that the procedure used is authorized by statute but argues that appellant has not demonstrated any prejudice. Of course, the rule is that prejudice is presumed from an error unless the contrary affirmatively appears, *Crosby* v. *State,* 154 Ark. 20, 241 S.W. 380 (1922). Furthermore, since the State here exercised 4 of its 6 and the appellant 5 of his 8 peremptory challenges on the first 12 jurors drawn from the panel, it at once becomes obvious that it was an advantage to the State to be able to examine all of the next 9 jurors before exercising its last 2 challenges — *i.e.,* it could peremptorily challenge the least desirable of the nine jurors instead of rejecting them one at a time. Consequently, we must hold that the trial court erred in requiring the appellant to examine all of the jurors drawn from the panel each time before the State was required to either accept or reject a juror.

In *Roleson* v. *State,* 272 Ark. 346, 614 S.W. 2d 656 (1981), the Arkansas Supreme Court dealt with a situation where *"only* the State was permitted to *voir dire* all of the remaining jurors before either party was allowed to exercise peremptory challenges". In *Roleson,* the Court held that the trial court erred in allowing such a jury selection process because it did not follow Ark. Stat. Ann. § 43-1903 (Repl. 1977), nor did it conform to the Court's holding in *Clark, supra.* The Court pointed out that "[i]n *Clark* we held a jury selection procedure to be unfair where the State and the defendant were allowed to *voir dire* all jurors before allowing either party to exercise its peremptory challenges . . . ."

Neither *Clark* nor *Roleson* involved exactly the same type *voir dire* as was done in the case at bar. *Clark* holds that a defendant may not be *required* to examine all the jurors

drawn from the panel before the State must exercise its peremptory challenges. *Roleson* holds that where *only* the State is permitted to *voir dire* the entire panel, prejudice occurs.

In the case at bar, both the appellant and the State were permitted to *voir dire* as they chose, but peremptory challenges were to be exercised one at a time with the State going first. Thus, it appears that neither *Clark* nor *Roleson* are exactly in point. This case presents for the first time the precise question of whether, following a timely objection, *voir dire* of more than one juror at a time by the State is to be permitted. It is clear that the trial court in this case set out the correct procedure for the exercise of peremptory challenges, *i.e.,* following *voir dire,* the State is required to exercise its peremptory challenge as to a juror and then, if the juror is accepted by the State, the defense must exercise its peremptory challenge.

Although the statute in question is capable of being interpreted in more than one way regarding *voir dire,* we believe that the Arkansas Supreme Court has, through *Clark* and *Roleson,* effectively disposed of this issue, even though this precise issue was not decided. If, as in *Clark,* it is unfair to require *voir dire* of all jurors by both sides prior to the exercise of peremptory challenges and if, as in *Roleson,* the State has an unfair advantage by being the only party allowed to *voir dire* all the jurors, then it certainly can be no less of an advantage for the State where the State is allowed the choice as to the number of jurors it wishes to *voir dire* at a time. Both *Clark* and *Roleson* indicate that the advantage to the State is bottomed on the idea that it is able to look ahead at the next group of jurors and select the least desirable in exercising its peremptory challenges. That advantage exists whether the State *voir dires* three, six, nine, or twelve at a time, since the State would have the information regarding the least desirable juror in that group at the time it began to exercise its peremptory challenges. The advantage to the State and disadvantage to the appellant cannot, under the holdings in *Clark* and *Roleson,* be alleviated by allowing the State to choose the number of jurors it wishes to *voir dire* and allowing the same choice to the appellant. This allows the

State to place itself in an advantageous position, *i.e.,* it could peremptorily challenge the least desirable of the group of jurors instead of rejecting them one at a time. Therefore, we hold that, upon a timely request, *voir dire* of jurors in felony cases must be conducted one at a time, followed by a peremptory challenge as to that juror by the State, and then if that juror is accepted by the State, a peremptory challenge by the defendant. This case must be reversed and remanded for a new trial.

II.

THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE SEVERAL PRIOR D.W.I. CONVICTIONS OF DEFENDANT [APPELLANT].

In this case, the first degree battery charge was based on an automobile accident between appellant's vehicle and a van. The evidence indicated that appellant was intoxicated at the time of the accident, that he had crossed the center line, and that he collided with the van on the shoulder of the road adjacent to the lane in which the van had been traveling, seriously injuring one of the occupants of the van. During cross-examination by the State, appellant admitted that he had been convicted of three prior D.W.I.'s. The trial court allowed this line of questioning under the Uniform Rules of Evidence, Rule 404 (b), Ark. Stat. Ann. § 28-1001 (Repl. 1979), which provides:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of any person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule permits evidence of other criminal activity if it has relevance independent of a mere showing that the appellant is a bad person. *Price* v. *State,* 268 Ark. 535, 597 S.W. 2d 598 (1980); *Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804 (1954). Even where the evidence has independent rele-

vance, it must be scrutinized under the substantial prejudice rule of Rule 403 of the Uniform Rules of Evidence. *Price, supra.* In this case the trial court did not make a determination as to whether the independent relevance of the prior D.W.I. convictions was substantially outweighed by the danger of undue prejudice, and on that basis alone the decision of the trial court would have to be reversed.

In *Blackwell* v. *State*, 34 Md. App. 547, 369 A. 2d 153 (1977), the Court of Special Appeals of Maryland dealt with a similar situation. In that case, an intoxicated defendant was operating his automobile and struck and killed a teenage girl who was riding her bicycle. Several witnesses testified as to prior bad acts of the defendant. One witness testified that appellant had pled guilty to driving while impaired sometime prior to the fatal accident. Another witness testified that the proprietor of a local tavern had refused to serve the defendant hard liquor and had restricted him to the purchase of beer because of his tendency to over indulge. A third witness testified that in 1973 the defendant had been involved in an accident while he was intoxicated. The court ruled that since one of the essential ingredients of murder was malice, then implied malice would have to be shown and that part of the proof of implied malice would be the defendant's knowledge regarding the risk to human life that he was taking in his actions. The court stated:

> It seems to me his previous experience with accidents while driving drunk as well as his previous experience with excessive drinking is some evidence for the Jury to consider in deciding what his state of mind was or the condition of his heart. . . .

In *Blackwell, supra,* the appellate court stated:

> Although we have found the evidence sufficient for the jury to have convicted appellant of driving while intoxicated and manslaughter by automobile, it is evident that the extensive testimony of prior drinking-habits and related misconduct (including a conviction for driving while impaired) was both improper and prejudicial.

In *Ross* v. *State,* 276 Md. 664, 669-670, 350 A. 2d 680, 684, the Court of Appeals clearly and concisely set forth the general rule of exclusion, its exceptions and the exceptions to the exceptions:

'The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. [citing cases] This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is "substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." C. McCormick, Evidence § 190 (2d ed. 1972).'

\* \* \*

There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and (5) the identity of the person charged with the commission of a crime on trial. [citing cases]

In *Blackwell, supra,* the court pointed out that it could imagine nothing more prejudicial in a case involving murder and manslaughter by vehicle while intoxicated than prior acts of intoxication. The court further pointed out that such evidence "has no purpose to serve in this case that could outweigh its inherent prejudicial effect."

We believe that the trial court was in error in determining that the prior D.W.I. convictions had independent relevance. The threshold question here is whether the evidence of three prior D.W.I. convictions was admissible in order to show appellant's intent, knowledge, or absence of accident. We believe that it was not. Battery in the first degree requires proof that a person caused serious physical injury to another peson under circumstances manifesting extreme indifference to the value of human life. Ark. Stat. Ann. § 41-1601 (1) (c) (Repl. 1977). The evidence supports a conclusion that the appellant did cause serious physical injury to another person. The evidence reflects that the circumstances surrounding the collision included a state of intoxication on the part of appellant. It was his intoxication and the manner of operating his vehicle at the time of the collision that were relevant for the jury in determining whether the "circumstances manifested extreme indifference to the value of human life".

We are unable to see how convictions for driving while intoxicated in the past had any independent relevance in proving the circumstances of this accident. Therefore we hold that, on these facts, evidence of the prior D.W.I. convictions had no independent relevance and therefore was improperly admitted. Further, even if such evidence was determined to have independent relevance, its prejudicial effect would be such as to require its exclusion from consideration by the jury.

### III.

### THE TRIAL COURT ERRED IN ALLOWING MENTION OF DEFENDANT'S [APPELLANT'S] REVOKED DRIVER'S LICENSE.

On direct examination, a state trooper testified that the appellant did not have a valid driver's license. Appellant's counsel objected, and his objection was sustained on the grounds of hearsay. The State then asked the officer to read the expiration date on the driver's license. Appellant's counsel objected again and his objection was sustained. When the appellant took the stand, the State was allowed, on

cross-examination, to elicit testimony from him that his license had in fact been revoked and that he did not have a valid driver's license at the time of the collision. The court ruled that this evidence was admissible as touching on the appellant's credibility.

Before acts of misconduct for impeachment purposes may be inquired into on cross examination, three conditions must be met: (1) the questions must be asked in good faith, (2) the probative value of the conduct must outweigh any prejudicial effect, and (3) the misconduct must relate to truthfulness or untruthfulness. *Harper* v. *State,* 1 Ark. App. 190, 614 S.W. 2d 237 (1981); *Divanovich* v. *State,* 271 Ark. 104, 607 S.W. 2d 383 (1980); *Gustafson* v. *State,* 267 Ark. 278, 590 S.W. 2d 853 (1979). We are unable to find any connection between the credibility of the appellant and whether he possessed a valid driver's license at the time of the collision. We hold that this testimony should have been excluded. We further hold that the trial court should not have allowed the State to argue about the revocation of the license during its closing argument.

## IV.

### THE TRIAL COURT ERRED IN REFUSING TO GIVE A REQUESTED JURY INSTRUCTION DEFINING THE PHRASE "UNDER CIRCUMSTANCES MANIFESTING EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE."

The trial court instructed the jury as follows:

W. T. Vowell is charged with the offense of Battery in the First Degree. To sustain this charge, the State must prove beyond a reasonable doubt that W. T. Vowell caused serious injury to Gary Camp under circumstances manifesting extreme indifference to the value of human life.

"Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of

health, or loss of — or loss or protracted impairment of the function of any bodily member or organ. (T. 156, 157).

This instruction is contained in Arkansas Model Criminal Instructions § 1601. The trial court is required to give the applicable AMCI unless it does not accurately state the law. Arkansas Supreme Court, *Per Curiam*, 264 Ark. 967 (Jan. 29, 1979).

Appellant's counsel requested an instruction defining the phrase "under circumstances manifesting extreme indifference to the value of human life." The requested instruction reads as follows:

A person acts under circumstances manifesting extreme indifference to the value of human life if he intended to cause serious physical harm to another person or if he was practically certain that his conduct would cause serious physical harm to another person. (T. 149).

The trial court denied the request. We view the requested instruction as one which would define the culpable mental state which was a necessary element in proving first degree battery.

The culpable mental state necessary to warrant a conviction is not set out in Ark. Stat. Ann. § 41-1601 (1) (c) (Repl. 1977). In *Martin* v. *State*, 261 Ark. 80, 547 S.W. 2d 81 (1977), the Arkansas Supreme Court said that, in a first degree battery case, a culpable mental state must be proved, thus making it a necessary element of the crime. The Supreme Court noted that the commentary to Ark. Stat. Ann. § 41-1603 (Repl. 1977) states:

For the most part, battery in the first degree comprehends only life-endangering conduct. The severity of punishment authorized is warranted by the conjunction of severe injury and a wanton or purposeful culpable mental state. Each subsection describes con-

duct that would produce murder liability if death resulted. . . .

The lowest degree of murder is found in Ark. Stat. Ann. § 41-1503 (Repl. 1977), which states:

Murder in the second degree. — (1) A person commits murder in the second degree if:
(a) with the *purpose* of causing the death of another person, he causes the death of any person; or
(b) he *knowingly* causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or
(c) with the *purpose* of causing serious physical injury to another person, he causes the death of any person. (Emphasis added).

Under this statute, the State must prove that the defendant acted either purposely or knowingly. Therefore, the State must prove as an element of first degree battery, that the appellant acted either purposely or knowingly.

The trial court must instruct the jury as to what the elements of the offense charged are. This does not mean that the trial court must give an instruction defining each element. *Pridgeon* v. *State,* 266 Ark. 651, 587 S.W. 2d 225 (1979).

We hold that the appellant was entitled to an instruction requiring the State to prove that he acted either "purposely or knowingly", and that he was also entitled to have the jury instructed regarding the definition of "purposely and knowingly". However, the court was correct in not giving appellant's requested instruction, since that instruction could have confused the jury. However, we would not reverse on this point alone because it was appellant's duty to propose a correct instruction. See, *Griffin* v. *State,* 248 Ark. 1223, 455 S.W. 2d 882 (1970).

## V.

## THE COURT ERRED IN REFUSING TO DECLARE

## A DIRECTED VERDICT OF ACQUITTAL.

In his argument on this point, appellant argues that the evidence is insufficient to support the conviction and that the trial court should have directed the verdict at the close of the State's case or the appellant's case. This case has been reversed and remanded for a new trial because of improper jury *voir dire* and improper admission of evidence. Improper admission of evidence is a trial error. *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). We will not review the properly admitted evidence to determine whether it is sufficient to prove guilt. The reason for this is because it is impossible to know what additional evidence the State might have produced or what theory it might have pursued had the improper evidence been excluded at trial.

### VI.

## THE TRIAL COURT ERRED IN LIMITING THE TESTIMONY OF DEFENDANT [APPELLANT] CONCERNING HIS INJURIES.

The appellant testified about the collision and the resulting injuries he suffered. He now complains that the trial court erred in failing to allow him to display his injuries to the jury. Appellant's injuries were not relevant in determining whether appellant was guilty of the crime charged. To allow the appellant to display his injuries to the jury might have prejudiced the minds of the jurors by creating sympathy for the appellant. *Jefferson* v. *State,* 196 Ark. 897, 120 S.W. 2d 327 (1938). It is in the trial court's discretion as to whether a witness will be allowed to display his injuries to the jury. *Vaughn* v. *State,* 252 Ark. 260, 478 S.W. 2d 759 (1972). We cannot say that the trial court abused that discretion.

### VII.

## THE TRIAL COURT ERRED IN ALLOWING IM-PROPER CLOSING ARGUMENT BY THE PROSE-CUTING ATTORNEY.

Appellant argues that the prosecuting attorney improperly referred to the revoked driver's license in his closing argument. That point has already been dealt with under point III. The State also argued that the jury should not consider appellant's physical injuries in determining a sentence. The appellant put this evidence before the jury and the weight it should be given was clearly a matter which could be argued by the prosecuting attorney. With regard to the other actions alleged to constitute misconduct during closing arguments by the prosecuting attorney, we note that the trial court has broad discretion in controlling, supervising, and determining the propriety of arguments of counsel, and we will not reverse the trial judge on such an issue in the absence of a gross abuse of discretion. *Shaw* v. *State*, 271 Ark. 926, 611 S.W. 2d 522 (1981). We find no abuse of discretion here.

### VIII.

### THE TRIAL COURT ERRED IN SEVERAL OTHER PARTICULARS.

Since counsel has conceded that none of the errors alleged under this general point constitute reversible error, we do not consider it necessary to rule on them as several are relatively unimportant and several others are unlikely to recur on retrial.

Reversed and remanded.

CLONINGER, J., concurs in part and dissents in part.

MAYFIELD, C.J., dissents.

LAWSON CLONINGER, Judge, concurring in part, dissenting in part. I agree with the majority that this case must be reversed and remanded on the grounds that the *voir dire* was not conducted in accordance with § 43-1903, but I believe the majority is mistaken in holding that it was error to allow evidence of appellant's prior D.W.I. convictions and evidence of appellant's revoked driver's license.

It is not seriously contended that appellant caused serious physical injury to another by means of a deadly weapon; he only contends that his acts were not committed under circumstances manifesting extreme indifference to the value of human life. Uniform Rules of Evidence, Rule 404 (b), permits evidence of other acts to prove intent or absence of mistake or accident. The appellant contends that the collision resulting in injury was an accident, and the purpose of introducing evidence of appellant's prior D.W.I. convictions and revoked driver's license was to rebut that contention.

The question is not whether the appellant, when he drove an automobile while drunk, intended to injure another; the question is whether he manifested extreme indifference to the value of human life *under the circumstances.* Part of the circumstances was the fact that appellant had been convicted of doing exactly the same thing on three previous occasions, which means that he was detected and convicted only three previous times; the further circumstance was the fact that appellant had been declared unfit to operate an automobile and he knew it. He caused serious injury and he did so because, just has he had done at least three times before, he manifested total indifference to the value of human life and had even been told by the State that he was not a fit person to operate a vehicle. The jury found that this was no accident and the jurors were the triers of fact. There is no way we can say that the trial judge did not weigh the danger of undue prejudice simply because he did not say the magic words, and there is no evidence that he abused his discretion in admitting the evidence.

I would reverse and remand on the issue of improper *voir dire* and find no merit to the appellant's other points for reversal.

MELVIN MAYFIELD, Chief Judge, dissenting. About 6:45 p.m. on April 8, 1979, Gary and Carol Camp and their three children left Paragould to return to their home in Blytheville. They had traveled only about two miles when the appellant, coming from the opposite direction, drove his vehicle across the center line of the highway and hit the

Camp vehicle which had been pulled onto the shoulder on its side of the road in an attempt to avoid the appellant's vehicle.

As a result of injuries sustained in the collision, Gary, who was then 35 years old, is now confined to a wheelchair, paralyzed from his armpits down, with no bowel or kidney functions, and in need of constant care.

The appellant was returning to Jonesboro from southeast Missouri where he had spent the day drinking. By 5:00 p.m. he was so drunk that an acquaintance who rode with him from one bar to another would no longer ride with him and the state trooper who got to the scene of the accident about 7:00 p.m. testified the appellant was under the influence of alcohol at that time.

Appellant had been convicted of driving under the influence of intoxicating liquor in February of 1977, in June of 1978, and in August of 1978. At the time of the collision in April of 1979, he did not have a valid driver's license because it had been revoked.

The majority of this court has found that appellant's conviction of battery in the first degree should be reversed. I dissent.

## ADMISSIBILITY OF EVIDENCE

One reason given by the majority for reversal is that the court erred in admitting evidence of appellant's prior D.W.I. convictions and evidence that his driver's license had been revoked.

I think this evidence was admissible under Rule 404 (b) of the Uniform Rules of Evidence. In *Price* v. *State*, 267 Ark. 1172, 599 S.W. 2d 394 (Ark. App. 1980) the court of appeals pointed out that this rule only codified the law in existence before the rule was adopted, and said: "In our view, the rule should be interpreted to exclude evidence of other offenses when its only purpose is to show the accused's character or some general propensity he might have to commit the

particular sort of crime in question." The Arkansas Supreme Court reviewed and affirmed that decision saying "the rule clearly permits such evidence if it has relevancy independent of a mere showing that the defendant is a bad character." *Price* v. *State*, 268 Ark. 535, 597 S.W. 2d 598 (1980). And the court quoted from its prior decision in *Alford* v. *State*, 223 Ark. 330, 266 S.W. 2d 804 (1954) as follows:

> If other conduct on the part of the accused is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible . . . .

Just when evidence of other crimes, wrongs, or acts is independently relevant has been decided on a case-by-case basis. *Price* v. *State*, 267 Ark. 1172, supra; *Conley* v. *State*, 267 Ark. 713, 720, 590 S.W. 2d 66 (Ark. App. 1979). And in *Thomas* v. *State*, 273 Ark. 50, 615 S.W. 2d 361 (1981), the court said "it would be wise not to hold such evidence inadmissible as a matter of law and to leave it instead to the trial court's discretion, subject to a case-by-case consideration." It is clear that rule 404 (b) does not specifically list all the purposes for which such evidence is admissible. In addition to those listed, such evidence has been held admissible to show guilty knowledge and to corroborate the testimony of another witness, *Price* v. *State*, 268 Ark. 535, supra; and to establish the facts and circumstances surrounding the commission of the offense under what was called the "res gestae exception," *Young* v. *State*, 269 Ark. 12, 598 S.W. 2d 74 (1980). A publicized example, from another jurisdiction, of when evidence of another crime has independent relevancy to the offense charged is the case involving Patty Hearst where she said she participated in a bank robbery because of duress and the court allowed evidence that she willingly participated with the same group in later criminal activity. *United States* v. *Hearst*, 563 F. 2d 1331 (9th Cir. 1977).

So, in the instant case, the first question is whether the D.W.I. convictions tended to prove some material issue

involved in the case. That portion of the statute under which the defendant was charged required the state to prove that he caused serious physical injury to another person *under circumstances manifesting extreme indifference to the value of human life.* Without the evidence of the D.W.I. convictions the jury could have found that the defendant spent the day drinking; that he was driving his car while drunk; and that the collision occurred because he was driving while intoxicated. The majority opinion seems to suggest that this evidence would be sufficient to support a finding that the defendant caused the injuries to Gary Camp under circumstances manifesting extreme indifference to the value of human life, but that does not mean that the D.W.I. convictions are not relevant on that issue. It is one thing to have too much to drink and think you can drive home safely; it is quite another to drive for the fourth time in 28 months while intoxicated. I believe the jury was entitled to know about the prior D.W.I. convictions.

Once the independent relevancy of the evidence is established, it must be scrutinized in the light of Uniform Evidence Rule 403 to determine if its probative value outweighs its prejudicial effect. *Price* v. *State,* 268 Ark. 535, supra; *Young* v. *State,* 269 Ark. 12, supra. *Price* says this balancing test is mandatory when there is an objection to the admission of the evidence but neither *Price* nor *Young* makes reference to the necessity of any oral or written finding to be made of record. *Price* cites *United States* v. *Sangrey,* 586 F. 2d 1312 (9th Cir. 1978) as authority for the rule that the determination must be made but *Sangrey* said "we refuse to require a mechanical recitation of rule 403's formula on the record as a prerequisite to admitting evidence under rule 404 (b)." *Price* also cites *United States* v. *Conley,* 523 F. 2d 650 (8th Cir. 1975) where the only reference to how the trial judge is to perform the balancing test is found in the opinion of a judge who dissented from the court's refusal to grant a rehearing and that opinion does not say that the trial court should make any express finding for the record with regard to the determination of the admissibility of the evidence. It does suggest, however, that a judge admitting such evidence should immediately caution the jury about its use *unless the cautionary instruction is*

*waived.* In the instant case no request for such a limiting instruction was made and in *Price* the court stated it could not say the evidence's potential for prejudice outweighed its probative value, especially in light of *petitioner's failure to request a cautionary instruction.*

In *Young* the supreme court affirmed the trial court in admitting evidence of other criminal activity and the opinion, which cites and relies on *Price,* makes no mention of any oral or written finding by the trial court reciting that a determination had been made that the probative value of the evidence outweighed its prejudicial effect. The Arkansas Supreme Court in both cases simply reviewed the record, found that it would support a finding in favor of allowing the evidence, and affirmed the trial court. This is our procedure in similar situations and this is the procedure we should follow here. See *Toney* v. *Miller,* 268 Ark. 795, 597 S.W. 2d 102 (Ark. App. 1980). We should also follow *Price* and *Young* which say that the trial court has wide discretion in determining the admissibility of this kind of evidence and that its determination will not be reversed absent an abuse of that discretion.

With regard to the evidence that appellant's driver's license had been revoked, I think this rides with the D.W.I. evidence. The defendant admitted his license had been revoked at the time of the collision and he admitted he had been convicted of D.W.I. within a year of that time. Under Ark. Stat. Ann. § 75-1029 (Repl. 1979), his license could have been revoked for a year upon his conviction for D.W.I. Without anything else in the record we have to assume that this is why his license was revoked. Thus, the revocation was admissible as a part of his D.W.I. conviction. It is true that the trial court stated this evidence related to appellant's credibility but we do not reverse just because the trial court gave the wrong reason for allowing it to be introduced. *Sanders* v. *Neuman Drilling Co.,* 273 Ark. 416, 619 S.W. 2d 674 (1981).

## REQUESTED INSTRUCTION

Another reason given for reversing this case is that the

trial court refused to give appellant's requested instruction telling the jury that a person acts under circumstances manifesting extreme indifference to the value of human life "if he intended to cause serious physical harm to another person or if he was practically certain that his conduct would cause serious physical harm to another person." The majority opinion says this instruction should have been given because *Martin v. State,* 261 Ark. 80, 547 S.W. 2d 81 (1977) holds that a defendant must act with one of the culpable mental states defined in Ark. Stat. Ann. § 41-203 (Repl. 1977). In my opinion, *Martin* holds to the contrary. There the court said of Ark. Stat. Ann. § 41-1601 (1) (c) (Repl. 1977), which is the statute the appellant here is charged with violating:

> In the case at bar the phrase "circumstances manifesting extreme indifference to the value of human life" indicates that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused. The language of the Arkansas statute does not require reasonable men to speculate as to its common understanding or application.

In *Martin* the trial court had given the jury an instruction defining "purposely," one of the culpable mental states defined in Ark. Stat. Ann. § 41-203 (Repl. 1977), and the supreme court said that the appellant could not object because the trial court had imposed the highest burden upon the state, requiring it to prove that the appellant's conduct was done purposely instead of knowingly or recklessly. But *Martin* did not hold that it was necessary for the court to define any of these terms. In my judgment, the case holds that the requisite culpable mental state is sufficiently defined by the language of the statute itself.

## SELECTION OF JURY

One other reason given by the majority for reversal is that the trial court erred in not requiring the voir dire of prospective jurors to be conducted one at a time and each one either challenged or accepted before the next one was

examined. The majority opinion concedes that the statute involved can be interpreted in more than one way and that the exact question presented here has not been decided by the Arkansas Supreme Court. Faced with this situation, I would reach a different result.

In the first place, the statute involved, Ark. Stat. Ann. § 43-1903 (Repl. 1977), certainly does not say that prospective jurors must be examined in such one-at-the-time manner. And in the second place, the *Clark* and *Roleson* cases which the majority opinion relies upon "even though this precise issue was not decided" should not be extended, in my opinion, to apply to the case at bar.

In both *Clark* and *Roleson* the state was allowed to exercise all its peremptory challenges at one time against a group of prospective jurors which the state had examined. This, the court held, gave the state the advantage of being able to exercise its challenges against the group and excuse those considered least desirable instead of having to reject them one at a time and perhaps use all its challenges before discovering those least desirable. Now it is easy to see how this would be beneficial to the state but it is difficult to understand why the defendant could not be given the same opportunity to enjoy an equal benefit. Surely there is no virtue in a rule adopted for the sole purpose of preventing peremptory challenges from being used to excuse undesirable jurors.

But, in any event, whatever vice existed in *Clark* and *Roleson* does not exist in the instant case. Here, the court specifically ruled that before the state could exercise *any* challenge the defendant would have the option to examine prospective jurors as a group or one at a time and to submit them to the state for challenge either as a group or one at a time. Thus, no prejudice could have resulted to the defendant and no reversible error was committed in this regard.

In addition, the process of voir dire already takes a great deal of time. To *require* that each prospective juror drawn be examined one at a time will require even more time. It is

possible that the time spent in the trial of criminal cases could consume an organized society.

I would affirm.