Kelvin MEEKS *v.* STATE of Arkansas

CA CR 95-962                                    936 S.W.2d 555

Court of Appeals of Arkansas
Division I
Opinion delivered December 11, 1996
[Petition for rehearing denied January 15, 1997.]

*Gregory E. Bryant,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Clint Miller,* Deputy Att'y

Gen. and Sr. Appellate Advocate, for appellee.

OLLY NEAL, Judge. Appellant, Kelvin Meeks, was convicted on May 11, 1995, of the offenses of negligent homicide and first-degree battery, and acquitted of carrying a weapon after a jury trial in the Pulaski County Circuit Court. On appeal, Meeks seeks only the reversal of the battery conviction, contending first that the State's evidence was insufficient to sustain the conviction, and secondly that certain inconsistencies in the jury's verdict require either dismissal of the battery charge or reversal of the conviction. Neither point of error warrants reversal or dismissal, and therefore we affirm the conviction.

The evidence presented at trial established that on December 28, 1993, appellant was involved in an altercation at the Pay More Pawnshop in southwest Little Rock, which resulted in the death of Cedric Brown and the serious injury of a three-year-old bystander. Terrence Williams, a friend of Cedric Brown's, testified that on the day of the shootings, he, Brown, and another man named Courtney Brooks were across the street from the Pay More Pawnshop when Brown spotted appellant's car and informed his companions, "[T]hat's the guy that robbed me last night." According to Mr. Williams, Brown did not actually know appellant and "had him mixed up with somebody else." Williams stated that Brown drove his automobile, a 1977 Oldsmobile to the pawnshop and parked about eight (8) parking spaces away from appellant's car, a 1987 gray Cadillac. When appellant exited the store, Brown went to the driver's side window of Meeks's car and exchanged words with appellant. Williams said he saw Brown reach for his pistol and heard shooting, but did not actually see gunfire exchanged because he immediately fled the area.

In his testimony on behalf of the State, Courtney Brooks admitted that he was with Williams and Brown when the shootings occurred. Brooks corroborated Williams's story that he, Brown and Terrence Williams entered the pawnshop parking lot so that Brown could confront appellant about a robbery that occurred the previous night, but claimed that prior to the incident, he did not know Brown was armed. Brooks testified that he saw Brown pull a gun out of his coat, heard shooting, and saw Brown fall to the ground. Brooks then got into the driver's seat of Brown's car and backed the car out in preparation to leave the store. Brown then jumped off the ground, got into the passenger seat, and was driven to a local

hospital for treatment. Brooks stated that he left Brown at the St. Vincent's Infirmary emergency room where Brown underwent emergency surgery and died a short while after being admitted.

Police officers who were dispatched to the shooting testified that upon their arrival at the pawn shop, they first noticed a Toyota truck with a bullet hole in the back window and that a small child, later identified as Robin Leath, had been injured. One mutilated lead projectile was recovered from the floorboard of the truck. None of the suspects or victims were found at the scene. Officer R.K. Brown testified that as he secured the crime scene, he found several spent rounds of ammunition and a human thumb that had been severed by a gunshot. Steven Zakrzewski, while en route to the pawnshop was dispatched to a Shell Super Stop gas station down the street from the shooting, testified that when he arrived at the gas station, he found appellant lying on the pavement. Zakrzewski stated that after appellant was transported by ambulance for medical treatment, he searched appellant's car and discovered a .357 handgun in the glove box and one (1) spent .9 millimeter hull in the back seat.

Doug Braswell, owner of Pay More, remembered the shooting incident and testified that when he first heard gunfire, he was standing outside the store, "talking to a couple about a television they had in the back of their truck." Braswell stated that when he realized that the men he saw standing by the store were shooting guns, he retreated inside the store. Other evidence revealed that three-year-old Robin Leath was struck at the base of her skull by a bullet from appellant's .357 and, after surgery at Arkansas Children's Hospital, suffers permanent brain damage. Appellant testified that he was unaware that anyone other than Brown had been shot until hearing it on the news while he was hospitalized.

Appellant first argues that the trial court erred in denying his motion for directed verdict on the first-degree battery charge, which amounts to a challenge to the sufficiency of the evidence to sustain appellant's conviction on that count. Specifically, appellant contends that the State failed to put on proof that he acted with the requisite culpability for battery first. That argument was based on the jury's finding that the killing of the primary victim occurred through negligent conduct. Our first-degree battery statute, Ark. Code Ann. § 5-13-201 provides in relevant part:

(a) A person commits battery in the first degree if:

\* \* \*

(3) He causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life . . .

Although the culpable mental state necessary to warrant a conviction under this section is not specified in the statute, under this definition of battery first, the culpability requirement may be satisfied by showing that the defendant acted either purposefully or knowingly with regard to the attendant circumstances. *Vowell* v. *State*, 4 Ark. App. 175, 628 S.W.2d 599 (1982). That interpretation of the statute is based on the commentary to the battery statute, which relates that the offense comprehends life-endangering conduct. The *Vowell* opinion also recognizes that the severity of the punishment authorized is warranted by the conjunction of *severe injury* and *a wanton or purposeful mental state*, and points to the portion of the commentary that notes that each subsection [of the battery statute] describes conduct that would produce murder liability if death resulted. *Id.* at 187-188.

█ Although appellant's first argument raises serious and troubling questions regarding the "knowing or purposeful" element of our first-degree battery statute, we are unable to address those issues as they are not properly preserved for appellate review. *See, e.g. Johnson* v. *State*, 270 Ark. 992, 606 S.W.2d 752 (1980). While appellant made a motion for directed verdict based on the precise ground he raises on appeal at the close of the State's case, and apparently renewed his motion at the conclusion of all the evidence, nothing appears in the record from which we could find that the trial court considered or ruled on appellant's second motion. Our appellate courts have traditionally followed the requirement found in A.R.Cr.P. Rule 36.21(b) that both motions be made, *Easter* v. *State*, 306 Ark. 452, 815 S.W.2d 924 (1991), and have placed the burden of obtaining a ruling on both motions upon the defendant. Objections and questions left unresolved are waived and may not be relied upon at or for appeal. *Danzie* v. *State*, 326 Ark. 34, 930 S.W.2d 310 (1996). Although it can readily be inferred from the context of the record that the trial court denied appellant's in-chambers motion for directed verdict, *Danzie* is controlling and "form" must once again prevail over "substance." Appellant ten-

dered a supplement to the record containing proof positive that his second motion was made, but he failed to include language indicating the court's ruling on the motion. Because of that deficiency, appellant has not preserved the sufficiency issue for appeal.

■ Appellant also contends that the jury's decision to acquit him of the offense of carrying a weapon should have negated any finding that he acted with the requisite intent to commit a first-degree battery. That type of argument has been consistently rejected by our appellate courts. *See Jordan* v. *State,* 323 Ark. 628, 917 S.W.2d 164 (1996); *McVay* v. *State,* 312 Ark. 73, 847 S.W.2d 28 (1993); *Yedrysek* v. *State,* 293 Ark. 541, 739 S.W.2d 672 (1987). Appellant cites no authority for his proposition that "fundamental fairness" requires reversal, and we therefore won't consider that argument on appeal. It is fundamental that absent citation of authority or convincing argument, we will not consider an argument on appeal unless it is apparent without further research that it is well-taken. *Roberts* v. *State,* 324 Ark. 68, 919 S.W.2d 192 (1996).

Affirmed.

STROUD, J., agrees.

ROGERS, J., concurs.

JUDITH ROGERS, Judge, concurring. I am in agreement with the decision to affirm appellant's conviction for first-degree battery on both issues raised in this appeal. Specifically, I agree that the record before us does not disclose that any question pertaining to the sufficiency of the evidence was preserved for appeal. I agree that the record does not reflect any ruling made by the trial court on appellant's motion for a directed verdict which was made at the close of the case, and while I agree that the record reflects that *a* motion for a directed verdict was made at that juncture, I am of the view that this motion was not sufficient to preserve the arguments raised in this appeal. It is for this reason that I write separately to concur in the opinion of the court.

In this case, the trial court entered an order correcting the record to reflect that appellant made a motion for a directed verdict at the close of the case. Under Rule 36.21(b) of the Rules of Criminal Procedure, it is necessary to make such a motion in a jury trial in order to preserve the issue of the sufficiency of the evidence on appeal. Also, it has been held that directed verdict motions must

state specific grounds. *Jones* v. *State*, 318 Ark. 704, 889 S.W.2d 706 (1994). A general reference to "insufficient evidence" does not satisfy the requirements of the rule. *Daffron* v. *State*, 318 Ark. 182, 885 S.W.2d 3 (1994).

The order entered by the trial court to correct the record states only the following:

> 2. The parties agree that at the conclusion of the above-captioned case, counsel for the defendant, Kelvin Meeks, made an oral motion, pursuant to Rule 36.21(b), for a directed verdict due to insufficiency of the evidence.

Significantly absent from this statement are the grounds upon which appellant moved for a directed verdict.

The record does reflect that appellant made a specific motion for a directed verdict at the end of the State's case upon the grounds which are urged on appeal, and it has been held that the renewal of a specific motion previously made is sufficient to preserve the issues raised in the former motion for purposes of appeal. *Durham* v. *State*, 320 Ark. 689, 899 S.W.2d 470 (1995). The problem here, however, is that the above-referenced stipulation is general in nature and reflects neither a renewal nor a motion made on any specific basis at all. In short, the record is silent as to the grounds upon which the motion was made, with the result that any question as to the sufficiency of the evidence has been waived. I also note that appellant filed a motion for a new trial in which he questioned the sufficiency of the evidence on at least one ground urged on appeal. However, a motion for a new trial is no substitute for meeting the requirements of Rule 36.21. *See Easter* v. *State*, 306 Ark. 452, 815 S.W.2d 924 (1991).

Moreover, entirely omitted from the order correcting the record is any mention of a ruling made by the trial court. As observed in the opinion, this, too, prevents us from reviewing the question of the sufficiency of the evidence.

I respectfully concur.